Good morning, Victor Joukopovits appearing for the Johnsons. Your Honor, a very limited argument here that we're not attempting to reverse the entire arbitration award. We're simply asking that a portion of the arbitration award be reversed, dealing with the inventory, the equipment lease, and the premise lease, because the order that was originally signed by Judge Matz sending the matter to binding arbitration limited the areas that the arbitrator could rule on. And by ruling on the inventory, equipment lease, and the premise lease, the arbitrator at our position has exceeded the order that was signed by Judge Matz. And therefore, we were asking that that matter be reversed only as to those issues. Why didn't you file a response to the motion to compel? As we indicated in our motion to vacate the arbitration award, my office has no record of ever receiving the motion to confirm the award. Had we received it, I would have opposed it. The record will show that I opposed every motion that was against us. And we put in our motion that's part of the record to vacate the arbitration award that we had never received the motion to confirm the award. Your Honor, that's all I have. I submit on that argument. And if there's any, you're quite allowed. So your point is that if you look at the district court judge's order, it says the court grants the motion to compel arbitration. Defendant's second, third, fourth, and fifth counterclaims are subject to arbitration. These counterclaims are hereby stayed pending the outcome of the arbitration. The court indicated it granted plaintiff's motion to compel all defendant's counterclaims except the injunctive relief claim. The injunctive relief claim specifically was to the inventory, the equipment lease, and the premise lease. Well, you know, injunctive relief is just a remedy. Correct. But we were just following Judge Matz's order. We were surprised when the arbitrator came out with his decision going beyond all the issues that were presented during the two-day arbitration. And he added, he being the arbitrator, added that the inventory, the equipment lease, and now the premise lease goes to Wetzel Pretzel in addition to filing. The whole case arose as a result of their alleged determination that, or their determination that the Johnsons had violated the terms and conditions of the franchise agreement. Excuse me. So the dispute arose when Wetzel determined that the Johnsons had violated the terms and conditions of the franchise agreement and terminated it under the provisions that allowed for termination, right? And the Johnsons didn't vacate and do the other matters that were required under the terms of the franchise agreement. So they go to court to get their injunction to stop the Johnsons from using the name Wetzel's Pretzels and all that other stuff that goes along with it because they have the trademark on it and whatnot. And then when there's a dispute like that, they have the right to, everything goes to arbitration. The whole matter goes to arbitration under the agreement. And that's all that, I mean, Judge Maas just sent the whole thing to arbitration. But the interesting point is, though, that Judge Maas specifically put in his order that the arbitration does not... What did they ask for in their motion to compel arbitration? To determine whether the franchise agreement had been terminated. And the arbitrator agreed... He said, so the judge said, the motion, the court grants the motion to compel arbitration. So it looks to me like what the arbitrator did is all derived from the agreement, which is consistent with what, you know... To put the question another way, what do you want Judge Maas to do? I mean, it's been determined by the arbitrator appropriately, you know, within the arbitrator's jurisdiction that there were violations. What's left? We don't dispute that the franchise agreement was terminated and the arbitrator found that there was justification to terminate it. Can't dispute that. So what's left? You can't use a trademark. What's left is the clients are still operating in the mall under another business name. And by assigning the inventory, the equipment lease, and the premise lease, now it's requiring that our clients just leave the mall, even though they're operating now without the name at Wessel Pretzel. Well, the franchise agreement itself provides for the reassignment of the lessee, right? That fell within the scope of what the arbitrator ordered, didn't it? I believe that that was one of the provisions, yes, and that's why my clients had the injunction request, because they didn't want that portion of the termination ruled on without a separate hearing. What do you make of Wessel's argument that Judge Matt specifically sent their second counterclaim to arbitration and that that second counterclaim covered this post-termination provision that was part of the franchise agreement? How do you respond to that? I don't really have a response to that. I haven't really analyzed that. Again, I'm still confused what's left. I mean, there's a determination that your clients, determination by the arbitrator, and it was appropriately before the arbitrator, that they violated the terms of the franchise. Right. Under the terms of the franchise, they have to make the reassignment. They have to stop using the name Wessel Pretzel, which they did. That's all. But they continue to get to use their equipment. Correct. Well, that's not quite correct under the terms of the—that's not right under the terms of the— That's why I'm surprised you say that. I thought under the terms of the agreement, they couldn't. You know, I really— You can say what you can say. Yeah. You want to save the two minutes for a rebuttal, counsel? Yes, thank you. Okay, thank you. May it please the Court, good morning. My name is Calvin Davis with Gordon and Reese for Wessel's Pretzels. This appeal is essentially an effort to re-argue what was decided against the Johnsons in arbitration. But we really don't even get there because the motion that was filed here in the court below was untimely. They had a certain period of time in which they were supposed to file any action with respect to that arbitration. What they did was we filed—we had the arbitration, we won the arbitration. We made the motion to confirm the award. It was properly served. It was served through the PACER system, a system through which the Johnsons and their counsel have responded to every other filed pleading and motion that was filed in that case. No opposition was ever filed to the motion to confirm the arbitration award. Judge Matz entered—confirmed the arbitration award, entered judgment in favor of Wessel's. And a month after the judgment was entered, the Johnsons for the first time filed what they styled as a motion to vacate the judgment. It was within the three months that they were entitled to do that. Exactly. It is within the outside limit of when parties are permitted to file a motion to vacate an arbitration award. But the authority we've cited to the court specifically says it's an authority that's really been unpredicted since the 1930s. We haven't adopted it yet, though. The Ninth Circuit has not in any published decision adopted that ruling. That is correct, Your Honor. We don't really need to in order to resolve this case, right? I'm sorry, Your Honor? We wouldn't need to do that in order to resolve the case. No, no, Your Honor, you don't. You don't. But specifically, the holding in that case is that you cannot simply sit on your hands. We prevailed at the arbitration. We make a motion to confirm the arbitration award. It's properly served. They file no opposition, motion granted, judgment granted, and then a month later they file a motion attacking the judgment award. But if we were to rule in your favor on that ground, implicit on that would have to be a holding that service electronically is service. And that's ipso facto. That's it. Correct, Your Honor. I think that is part of that, and it certainly has been. I think that's simply the way that the federal courts work, and everyone understands that it is how service works. But even if you were to put that aside for the moment, what they're entitled to do on this appeal is to attack the judgment and say that for some reason there is a grounds to vacate the judgment. That certainly is timely. But the problem is they presided no evidence, presented no evidence to the court under FRCP 60 that there are any such grounds to vacate the judgment. There's been no evidence of fraud. There's no submission of new facts, new evidence, something, some changed circumstances that would provide this panel with the basis for vacating the judgment. So there's really nothing there. Do you know why the first counterclaim is not listed in Judge Mattis' order granting arbitration? I think it's simply, it was simply, the first is with respect to, I believe, just injunctive relief. I think it's just a question of, you know, what relief would be granted. The reason I believe that that happened is the motion to compel arbitration, which we brought, was directed to the counterclaim brought by the Johnsons. We had already filed an arbitration proceeding in front of the AAA, which included the entire panoply of every claim under the franchise agreement. So we were just simply stating the claims, the substantive claims and the counterclaims brought by the Johnsons should also be included in the arbitration, which is what occurred. And the scope of the arbitration was every issue, every dispute that could possibly be raised under the franchise agreement has a very broad arbitration clause. I'm sorry, I just don't remember. Under the franchise agreement, does it say that the equipment comes back to you? Yes, it does. It says that if we prevail with the arbitration and we demonstrate that the franchise agreement has been violated, which is what the arbitrator found, we're entitled to have both the real property lease assigned back to us and also to have the equipment leases assigned back to us. And the arbitrator found in our favor across the board on those issues. So, yes, we were entitled to all of those under the franchise agreement and under the very broad arbitration clause. That's what the arbitrator found. And that is what Judge Matz affirmed in the order confirming the award. So there's really nothing left to be done. There's really, I agree, there's really nothing. There's nothing left to the case.  Absolutely. At the outset of the case, we wanted preliminary injunction to have them de-identify, to stop using Wetzel's trademarks when they were in violation of the franchise agreement, and then simply we arbitrated the balance of allegedly whether we wrongfully terminated and whether we could enforce our rights under the franchise agreement. Arbitrator found in our favor, and there's really nothing left to the case. I'll just briefly, even assuming that the Johnsons had timely filed the appropriate motions in front of Judge Matz, they misapprehend the standard here. Even if they were properly before this court now in saying that the arbitrator made an incorrect decision, the only grounds they assert are that he exceeded his powers. Well, that's an extraordinarily high standard. You have to demonstrate essentially irrational behavior, knowing what the law is, ignoring the law. They don't really present anything like that to this court. So even assuming that they had timely filed the appropriate papers in front of Judge Matz, which they did not, they simply haven't provided the evidence that would be necessary to either vacate the judgment under Rule of Civil Procedure 60 or to vacate the arbitrator's award as somehow being irrational or with intentional ignorance of what the law required in this circumstance. So given all that, we just don't think it's even a close question here that the judgment below should be affirmed. Okay. Why didn't you bring a Wetzel's pretzel so we could know what we're talking about? Maybe the breakdown. You had two minutes left on the clock. I submit, Your Honor. Okay. Thank you, counsel. We appreciate it.
judges: Motz, Paez, Nguyen